Mr. Schlesinger. May it please the Court, thank you, Your Honor, and good morning. This appeal arises from an erroneous denial of a judgment, I'm sorry, erroneous grant of a judgment on the pleadings, finding that the defendant had no duty to defend my client Mesa from statutory and common law claims based on the sending of faxes. I'd like to focus on one procedural and then two substantive issues, and the procedural issue is this, it's pretty well established that in evaluating a motion for judgment on the pleadings, all reasonable inferences are to be drawn in favor of the non-moving party, and the judgment should be granted only if it's clear that the non-moving party cannot prove any set of facts sufficient to prove its claim. And I would note that in a judgment on the pleadings, that's a, the judgment is a bit harsher than, say, a Rule 12b6 motion, where if the motion is granted, it's often the case that the district judge would allow an amendment of the pleadings. Here, if the judgment on the pleadings is granted, case is over, subject to whatever happens in the Court of Appeals, and I say that because that harshness suggests that it's important to apply seriously that standard, it has to be clear that the non-moving party cannot prove any set of facts that would prove its claim. Against that standard, the district court, in dealing with the facts at issue, examined the facts and noted that it was directed to new customers, and that it asked for contact information, and therefore drew the inference that it could not have been solicited, invited, or agreed to by the facts recipients, because how could a new customer agree to receive a fax? But that may be a reasonable inference, but it's certainly not the only reasonable inference. A perfectly reasonable inference would be that Mesa, in talking to a potential customer, said, hey, I've got this great test kit, I'd like to send you a fax discussing it, describing it, and the potential customer says, sure, send me the fax, and then the fax goes out and says, for new customers, here's your discount, and please, if you want to buy this, please give us the contact information of the person we should deal with when we send you the test kit. Mr. Schlesinger, I thought the argument you were making is different than that. I thought you were saying that Mesa participated in the Cigna Dental Rewards Program, and by virtue of that participation, believed that Cigna Dental participants would welcome blast faxing and these solicitations, and therefore, you obtained a list, or your client did. Your client obtained a list, and then went about the marketing solicitation by using that list. Is that right? That is exactly correct, Your Honor. I mean, I wouldn't call it blast fax, as the court did, because it was targeted to only faxed. No, I don't mean it in a negative. I just mean it in terms of you sent out a fax to a whole list, your client did, sent out a fax to a whole list of people. It was a list of people that my client was given by Cigna, with the understanding that they were people who had agreed to participate in this rewards program, and therefore, were interested in seeing the fax. Now, for purposes of the TCPA claim, which I know has been settled, whatever Mace's view of whether the faxes were welcomed or not is neither here nor there, right? Because that statute provides a defense only on the basis of a showing of prior expressed consent or a pre-existing business relationship. That's correct, Your Honor. Okay, so the argument there that your client perceived that these would not be a nuisance, that they would be welcomed, it can only, right, that can only relate to the conversion claim, or the right that's left here? Well, I think it could relate to... I'm just trying to figure out the relevance of it. I mean, do we...  Yeah, go ahead. I'm sorry, Your Honor. No, go ahead. The standard for the insurance coverage issue is what was expected or intended by Mesa when they sent out the fax. So, whether there's liability under the TCPA is really not the question. And that's why the TCPA claim was actually settled. The issue in the insurance coverage context is what did Mesa understand that these faxes were invited when it sent them out? And as long as it, you know, whether it gives rise to liability or not is a completely different question. So, that, because I think it, there was a set of facts that could be proved had the district court allowed us to proceed, that would show that Mesa did not expect or intend to cause harm, and that therefore, this was an accident, was an occurrence within the meaning of policy. The question then becomes... Well, I'm quite apart from the expected or intended business. There is an exclusion in the policy for claims under the TCPA. We should address, I hope you will address, why that exclusion doesn't apply. I will address that right now, Your Honor. Thank you. When the policy was issued by federal and sent to Mesa, it had a provision that excluded any coverage for faxes, basically. And immediately, federal amended that exclusion to take it out of the policy and substituted an exclusion that effectively said there would be no coverage for damages awarded under the TCPA. It did not say anything about damages awarded for common law claims, such as conversion or nuisance. So, when Mesa was sued under the TCPA, but also for common law nuisance and conversion claims, there was nothing in the exclusion that deleted coverage, that negated coverage for those common law claims. And because of that, Mesa had an obligation... Counsel, the question I have is, if I understand state law correctly, state law treats claims as statutory without regard to the pleading, if the nuisance is that the statute was violated. Well, we don't have a decision on that issue from either the Illinois Supreme Court or the Colorado Supreme Court. We do have appellate court guidance. We do have appellate decisions. We have appellate court decisions, certainly in the state of Illinois, and we have a question as to whether Colorado or Illinois law applies. But even assuming Illinois law applies, none of those decisions all dealt with exclusions that focused on the conduct giving rise to the liability. The exclusion drafted by federal, or the amendment to the exclusion drafted by federal, took away the exclusion that would have excluded any fax liability and substituted in its place only an exclusion for damages awarded under the TCPA and not the common law counts. So I don't think there is a case in either Colorado or Illinois that deals with that situation. What about FIESE? FIESE doesn't mention common law. FIESE had a different exclusion, and I think that exclusion arguably focused, again, on conduct rather than on the nature of the remedy, whether it would be statutory or not. Didn't the first district in FIESE expressly address the argument that you're making? FIESE did address the argument. What it didn't have in the FIESE case was the ambiguity created by the first delivering a policy that said there wouldn't be coverage for faxes and then delivering an amendment to that policy that said that the only exclusion was for statutory awards. And the reason that's important is there's a lot of, there's no Illinois Supreme Court law on that exact issue, but there is a lot of Illinois Supreme Court law on the question of ambiguities. And that action by federal in amending the policy, changing the exclusion could certainly lead one to believe, particularly construing the exclusion most favorably toward the insured, which is required under well-established Illinois law, could lead a reasonable insured and a What the federal was doing was eliminating the exclusion for faxes in general and only implementing an exclusion for faxes that cost TCPA. I wonder whether there are other pending cases that present the sort of issue that's present here. I know there's one already under advisement by another panel of this circuit in Zurich insurance against Ocwen financial. Are there any similar cases pending in the Illinois or Colorado courts? As of the last time we looked, your honor, we did not see any, but I, I would, I mean, if the court will allow me, I'll be happy to do a more in-depth look at that question and get back to, I would appreciate it if you can find out if there are other similar cases pending. We will certainly do that, your honor. At this point, if it's okay with the court, I would, unless there are other questions, I would ask to reserve the rest of my time for rebuttal. Certainly Mr. Schlesinger, Mr. Cunningham. May it please the court. Good morning. I'm Daniel Cunningham on behalf of Appley Federal Insurance Company. I'll start with a discussion of what Mesa refers to as the unendorsed version of the exclusion in their brief. That so-called unendorsed version was never operative in Mesa's policy. It never took effect. As such, it is the quintessential drafting history. It's quintessential extrinsic evidence, and we know that in a contract case, evidence that is extrinsic isn't taken into consideration unless there's an ambiguity. Now, of course, federal contends and the district court agreed that there is no ambiguity here. And the reason we know there's no ambiguity here is A, by reading the plain language of the endorsed exclusion, but also because we have a trio of appellate level decisions from telling us that exclusions just like these exclusions or this exclusion bar coverage for TCPA claims, including the related common law claims. The Fayese case is directly on point. The language in that exclusion is not meaningfully different from the language in federal's exclusion. And I also should point out that counsel misstated what federal's exclusion says. He indicated in the argument this morning that it bars coverage for claims under the TCPA. That's not what it says. Rather, it bars coverage for claims arising out of the TCPA, and that's a big difference because when you look at the allegations in the actual complaint, and of course the allegations control the initial duty to defend analysis, it appears that Dr. Orrington, the plaintiff in the underlying case, went out of his way to connect the common law claims to the TCPA claim. For example, in each of the common law claims, he starts by adopting by reference paragraphs one through 20 of the complaint. Adoption by reference is something that lawyers do all the time, but does it actually have a meaning? Is it actually significant for purposes of a coverage case? The answer is yes, because the same thing occurred in the trio of cases in Illinois, and in those cases, Fayese, G.M. Sine, and West Dundee, the courts looked at the adoption by reference and said, yes, that brings the TCPA claim within the scope of the common law claims. Mr. Cunningham, can I ask you one question? I understand your argument. You've been very clear on it this morning and in your briefs. Why if that, the exclusion that we're talking about here, why if that exclusion is driven by TCPA liability? In other words, because of the arising under language, why wouldn't you write or why wouldn't your client write that exclusion in the broadest possible terms known to humankind? Because Your Honor, we think we wrote it in awfully broad terms. As long as the claim arises out of the TCPA, it's excluded irrespective of whether it's expressly stated as a statutory claim or as a common law claim. But that right there is the important point. Insurance companies don't leave anything to chance, right? Correct. And why wouldn't they write exactly what you just said? In other words, at the end of the exclusion, put a comma and say whether the liability an executive decree or any other form of law. It certainly would have been more helpful, but ultimately it's not necessary as long as the claims are alleged to arise out of the TCPA. And I'll note that in the exclusion say today, it bars coverage for loss, damage or expense arising out of violation of the TCPA. So even to this day, there's no reference to common law? There is not a reference to common law, but there is a reference to the fact that it bars coverage for claims. Oh, Your Honor, I took your question to mean, what does the exclusion in this? No, no, no. If after the argument, I called your client and said, send me a policy, I'd like to acquire one this afternoon. What would that exclusion say when they sent me a copy? I imagine it would say something very close to what we're looking at here, but I've not looked into that issue as to recent policies. So I cannot. I mean, it's not legally relevant. It's more I'm more curious than anything. Sure. And the Fayese case and the other two Illinois appellate cases both came to the conclusion that insurance exclusions like this that don't explicitly reference common law claims still bar coverage for those claims. And the courts applied a but for analysis. And that same analysis has to be brought to bear here. If we agree with you that Fayese and West Dundee and the other one that this exclusion applies, we can stop there, can we not? Correct. This issue is entirely dispositive of the case. We started out this was our primary defense below. If we prevail on this exclusion, as we continue to hope to do, there's no need to even address the other defense involving the occurrence issue. Before I move on to the occurrence issue, I'll just point out that the underlying complaint here is even better for the insurance company than the underlying complaints in those other three cases, because here Dr. Orrington describes his proposed class in a way that makes participation in the class, even as to the conversion claims, contingent upon violation of the TCPA. Because the class definition as to each of the common law claims refers to the fact that the fax advertisement in question must not have the opt-out notice required by the TCPA. Well, by doing so, Dr. Orrington has expressly connected his common law claims directly to the alleged TCPA claims. So we think clearly this exclusion applies and that judgment was properly granted in favor of federal insurance company. Counsel, just a question. Do any fax machines currently exist? Yes. Not very many though, I wouldn't think, right? They are indeed rare these days, Your Honor. I almost never use mine now. Thank you. So as I indicated, this issue is entirely dispositive of the case. If for some reason there was some disagreement about that, we also have a coverage defense based on the occurrence definition and the expected or intended exclusion. And I'll start and finish by noting that in the Seventh Circuit, we have a case called American States versus Capital Associates, where the court has determined as a matter of law that the property damage occasioned by the transmission of an unsolicited fax is necessarily expected or intended. And in that case, this court said, senders may be uncertain whether particular faxes violate 227B1C, but all senders know exactly how faxes deplete recipients consumables. And then the court goes on to say, because every junk fax invades the recipient's property interest in consumables, this normal outcome is not covered. That exact same logic, that rationale must be brought to bear upon this case. It's impossible to send a fax without knowing that paper and ink are going to be consumed, and therefore, there can be no accident and the expected or intended injury exclusion would apply. I should also say a word about choice. I must say, counsel, that Judge Kaney asked about technology, and there are not that many fax machines sitting around on people's desks anymore, but modern faxes come via computer and the fax shows up on your screen. No consumables are consumed. How does that affect your argument? That would make the case even better for the insurance company, Your Honor, because if there was nothing that was consumed, then there is no property damage in the first instance. For property to be damaged, there has to be physical injury to tangible property or loss of use of property. Well, if nothing is consumed and nothing is lost in terms of its use, then there is no property damage. And one unique... What's lost still is the recipient's time. So your view is your policy doesn't cover time, it only covers paper. Correct. And I would also point out that normally, when we're arguing about coverage or lack thereof for TCPA cases, we're also talking about the part of the policy that covers invasion of privacy. And the issue that Your Honor just flagged is often an issue that we also confront when it comes to the whole question of privacy. We don't have those issues here because the definition of personal injury in the policy was amended in a way that all privacy coverage was taken out. So if you were to read the dozens of cases in Illinois talking about coverage for TCPA claims, 90% of them are talking about privacy-related issues and intrusion upon seclusion. None of those issues apply here. We only have the property damage part of the policy in play. And as we've stated and as the district court found, coverage should not apply under that part of the policy. Real quick before I wrap up, there are also choice of law contentions made in Mesa's brief. With regard to the information laws exclusion, Mesa has not identified a conflict of laws as between Illinois and Colorado. And of course, in Illinois and in virtually every other state, before you even make a decision, you have to determine if there's a conflict of laws. And that analysis occurs on an issue-by-issue basis. And in the event that there is no conflict of laws, then the court defaults to the law of the forum, which in this case, of course, is Illinois. So as to the information laws exclusion, there isn't even a suggestion of an actual conflict and therefore Illinois law will apply. The occurrence issue is a bit different. They do at least attempt to mount an argument that there is a conflict. I would suggest that's a false conflict and that the laws of Illinois and Colorado are essentially the same as to what constitutes an occurrence and when the expected or intended injury exclusion applies. So with that, I will stop talking and I'm happy to answer any other questions the court might have. Thank you, Mr. Cunningham. Anything further, Mr. Schlesinger? Yes, Your Honor. If I could just try to hit quickly a few of the points that Mr. Cunningham made. First, he contends that we're relying on extrinsic evidence when we're talking about the original form of the policy. That policy was delivered in its entirety with all of the provisions and the four corners of that policy include the language that I was referring to earlier that creates the ambiguity. There's no case law supporting the idea that sending a policy that has a provision and amending it makes the initial language extrinsic. On the question of the exclusion, Mr. Cunningham suggested that I was mischaracterizing the language. It is actually Mr. Cunningham, I don't think deliberately, but perhaps inadvertently, who mischaracterized the language of the exclusion. He says that it refers to claims and it doesn't refer to claims. What it refers to is any damages, loss, cost, or expense arising out of any actual or alleged or threatened violation of the TCPA. So the damages have to come from the TCPA under their exclusion and the damages that were alleged in the underlying complaint include TCPA damages, but they also alleged common law damages, which are not damages that come out of the TCPA. On the question of American states, yes, American states with, I think, two members of the panel of this panel sitting in that case came out with a strong and very strong presidential position. It makes no difference who is on any panel. Opinions of the courts speak for the court and we don't think that ad hominem arguments add anything. I'm sorry, Your Honor, I apologize for that. My point about American states is that it dealt with, it concluded that it was dealing with junk faxes. What we have here are not junk faxes. Junk faxes, I think, is a term that refers to mass marketing faxes that are sent out without regard to who the recipients are. They just find numbers and send them out. That as we've suggested was not the case here. These were faxes that were sent to a targeted list of people that the plaintiff here, Mesa, had every reason to believe had invited the faxes. The question that, Your Honor, that Judge Easterbrook raised about consumables, yes, it is certainly the case that many faxes nowadays go to computers and they may not consume paper and toner the way old-fashioned fax machines do. But I still have an old-fashioned fax machine that uses toner and paper and a lot of people do. And more importantly, the underlying claim that we're talking about here was one in which there were allegations of nuisance and conversion, and at least the conversion count is premised on the taking of consumables. I think that covers the points that I wanted to make, so I will stop talking unless the court has any questions. Thank you, Mr. Schlesinger. The case is taken under advice.